**PURSUANT TO INTERNAL REVENUE CODE SECTION 7463(b),THIS OPINION MAY NOT BE TREATED AS PRECEDENT FOR ANY OTHER CASE.**

T.C. Summary Opinion 2014-22

UNITED STATES TAX COURT

SCOTT A. KAMIENESKI AND ERESIA KAMIENESKI, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 19621-12S.                    Filed March 11, 2014.

Scott A. Kamieneski and Eresia Kamieneski, pro sese.

Michael R. Fiore, for respondent.

SUMMARY OPINION

PANUTHOS, Chief Special Trial Judge:  This case was heard pursuant to

the provisions of section 7463 of the Internal Revenue Code in effect when the

petition was filed.  Pursuant to section 7463(b), the decision to be entered is not

reviewable by any other court, and this opinion shall not be treated as precedent

for any other case. Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined a deficiency of $3,937 in Scott A. Kamieneski (petitioner) and Eresia Kamieneski's 2009 Federal income tax.

The issue for decision is whether $11,250 petitioner received in 2009 is capital gain or ordinary income.

## Background

Some of the facts have been stipulated, and we incorporate the stipulation of facts by this reference. At the time the petition was filed, petitioners resided in Massachusetts.

Petitioner has many years of experience in sales and sales management. In 2005 he began working for Symcon Global Technologies (SGT) as the vice president of sales. Petitioner worked for SGT until he was laid off on April 30, 2008. Petitioner was unemployed for 4½ months during which he pursued employment opportunities with technology companies and engaged in business activities using his experience in technology. In September 2008 he began working for Oracle Corp.

Shortly after leaving SGT's employment, petitioner met with SGT's chief executive officer to explore a possible business arrangement with SGT. SGT indicated that it was in need of and petitioner offered to develop an improved client engagement methodology (client methodology).

Over the next few months petitioner developed certain business model and practice innovations in the form of a client methodology. This client methodology was designed to assist small to medium-sized businesses to implement excellence by taking a comprehensive, strategic approach to the life cycle of a business or product. This methodology was called LABS, for Learn, Analyze, Assess and Adapt, Build and Scale. Upon completion of the client methodology, petitioner and SGT entered into an agreement which provided, in part, for the following:

> WHEREAS Kamieneski has created enterprise value for SGT in the form of Goodwill and certain Business Model and Business Practice Innovations (for example, the LABS client engagement methodology); and

> WHEREAS Kamieneski and SGT have determined it is in their respective best interests to establish a single dollar value for these SGT assets provided by Kamieneski.

> NOW, THEREFORE, for and in consideration of the mutual promises and agreements contained herein and in consideration of the payments to Kamieneski as provided in this Agreement, the sufficiency of which is hereby acknowledged, SGT and Kamieneski hereby agree to the following:

1. <u>Consideration</u>.

(a) SGT agrees to pay Kamieneski the sum of $22,500 in six equal installments of $3,750 to be paid on or before the last day of October, November, December (2008), January, February and March (2009).

(b) Kamieneski agrees to accept the consideration described in this Paragraph No. 1 as full, complete and adequate consideration for Kamieneski's provision to SGT of the aforementioned Goodwill and Business Model Innovations.

2. <u>Release and Indemnification</u>.

SGT and Kamieneski release, indemnify and forever discharge the other from any and all claims pertaining to the aforementioned Goodwill and Business Model Innovations.

Petitioner drafted the one-page agreement. Petitioner did not apply for, nor obtain, a copyright or patent for the client methodology. Petitioner received $11,250 in 2009 pursuant to the agreement with SGT.

Petitioners timely filed their 2009 Federal income tax return but did not report receipt of the $11,250 in installment payments. Respondent selected petitioners' 2009 return for examination. After receipt of the notice of examination, petitioners submitted an amended return reporting $11,250 on Schedule C, Profit or Loss From Business, as gross receipts and then claimed cost of goods sold of $11,250. Respondent did not accept petitioners' amended return. Instead, respondent issued petitioners a notice of deficiency determining that

petitioners failed to report receipt of $11,250, characterizing it as "nonemployee compensation" taxable as ordinary income. Petitioners do not contest receipt of the $11,250 but assert that it was capital gain and not ordinary income.

Discussion

The Commissioner's determination set forth in a notice of deficiency is presumed correct, and a taxpayer generally bears the burden of proving otherwise. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Pursuant to section 7491(a), the burden of proof may shift to the Commissioner if the taxpayer produces credible evidence with respect to any relevant factual issue and meets other requirements. Petitioners did not allege that section 7491(a) applies. See sec. 7491(a)(2)(A) and (B). Therefore, petitioners bear the burden of proof. See Rule 142(a).

Section 61 provides, in part, that gross income means all income from whatever source derived including (but not limited to) compensation for services and gains derived from dealings in property and royalties. Section 64 provides, in part, that the term "ordinary income" includes any gain from the sale or exchange of property that is not a capital asset. Capital gain will result from gain on the sale or exchange of a capital asset. See sec. 1222.

For a transaction to receive capital gains treatment, the property which is transferred must be sold or exchanged. Nahey v. Commissioner, 111 T.C. 256, 262 (1998), aff'd, 196 F.3d 866 (7th Cir. 1999). It is frequently necessary to determine whether a variety of conditions included in an agreement between the transferor and the transferee transforms a purported sale into a license, thus requiring the gains from the transaction to be taxed as ordinary income. Tomerlin Trust v. Commissioner, 87 T.C. 876, 883 (1986). When an agreement is interpreted as reserving significant powers, rights, or continuing interests to the transferor, then it has been held that such reservations preclude a finding of a sale. Id.

In order for the transfer of the client methodology to be deemed a sale for tax purposes, petitioner must establish that he surrendered all substantial rights of value in the client methodology; otherwise, the transfer is deemed to be a license. Glen O'Brien Movable Partition Co. v. Commissioner, 70 T.C. 492, 500 (1978).

In order to ascertain whether petitioner and SGT intended that there be a transfer to SGT of all substantial rights of value in the client methodology, we look first to the terms of the agreement. We are mindful that the terminology used in the agreement may be of significance; however, the label or name the agreement bears is not determinative, nor is the form thereof conclusive. Tomerlin Trust v.

Commissioner, 87 T.C. at 881-882; Taylor-Winfield Corp. v. Commissioner, 57

T.C. 205 (1971), aff'd, 467 F.2d 483 (6th Cir. 1972); Cleveland Graphite Bronze

Co. v. Commissioner, 10 T.C. 974, 988 (1948), aff'd, 177 F.2d 200 (6th Cir.

1949).

The agreement itself does not contain terms that would suggest exclusivity

in the transfer to SGT upon execution of the agreement. Petitioner asserts,

however, that when he entered into the agreement with SGT he intended to give

up all rights in the client methodology. Petitioner explains that he and SGT agreed

that SGT was paying for more than just the client methodology; SGT was paying

for "goodwill". Petitioner asserts that this provision of "goodwill" was his

agreement to give up all rights in the client methodology and that all rights in the

client methodology thereafter belonged to SGT.[1]

Upon examining the terms of the agreement, we conclude the parties did not

intend that petitioner transfer to SGT all substantial rights of value in the client

methodology. We base our conclusion on the fact that the agreement contains no

terms preventing petitioner from disclosing the client methodology to other

---

[1]Goodwill is defined as the favor or prestige that a business has acquired beyond the mere value of what it sells or the value of projected earnings increases of a business especially as part of its purchase price. Merriam-Webster's Collegiate Dictionary 502 (10th ed. 1997). Petitioner does not claim that he had developed personal or commercial goodwill as that term is defined.

persons or entities. Although petitioner claims that he developed the client methodology and gave up all rights to that methodology to SGT, the contract he entered into with SGT does not confer to SGT exclusivity in the client methodology. Although petitioner asserts that "goodwill" conferred exclusive rights, we do not accept that petitioner, a seasoned professional, actually believed that the provision of "goodwill" granted SGT exclusivity in the client methodology. Most importantly, if SGT had sought exclusive rights in the client methodology, it is unlikely that it would have used ambiguous terms to obtain those rights.

Given the nature and terms of the agreement, we conclude that petitioner did not grant SGT exclusivity in the client methodology.[2] Therefore, petitioner's provision of the client methodology to SGT did not amount to a sale and the remuneration petitioner received for the provision of the client methodology to SGT is considered ordinary income.

---

[2]The terms of the agreement seem to indicate that petitioner was contracted by SGT to develop a methodology for SGT, thereby taking on a more "fees for services" likeness. If petitioner created the client methodology for SGT and never owned it, he could not have sold it to SGT. See generally Regenstein v. Commissioner, 35 T.C. 183 (1960).

We have considered all of the parties' arguments, and, to the extent not addressed herein, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.